IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2005 DEC 12 A 11: 17

James Elliott McNeil, #147700,  )      C. A. No 05-0240-HMH-RSC
                                )
            Plaintiff,          )
                                )
       -versus-                 )      **REPORT AND RECOMMENDATION**
                                )
Richard E. Bazzle, Warden of    )
Perry Correctional              )
Institution; and J. Bratka,     )
Officer at Perry Correctional   )
Institution,                    )
                                )
            Defendants.         )

This civil rights action pursuant to 42 U.S.C. § 1983[1], brought by James Elliott McNeil, a state prisoner proceeding pro se and in forma pauperis, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendants' motion for summary judgement. 28 U.S.C. § 636(b).

On January 31, 2005, McNeil filed the instant civil rights case and named as defendants Richard E. Bazzle, Warden of Perry

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

1

Correctional Institution, (PCI), a facility of the South Carolina Department of Corrections SCDC, and J. Bratka, an officer at PCI. McNeil alleged he was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. Specifically he asserted that he was deprived of approved sunglasses necessary for relief from an eye disease which makes exposure to sunlight painful. Allegedly Bratka took the sunglasses from McNiel and filed a disciplinary charge against McNiel for possessing contraband sunglasses. McNeil apparently also alleges that he was denied due process under the Fifth and the Fourteenth Amendments to the Constitution when defendant Bazzle refused his requests to return the sunglasses. McNeil did not name any medical staff member as a defendant. He seeks equitable relief and punitive and compensatory damages.

On June 9, 2005, McNeil was provided copies of the defendants motion with affidavits and exhibits and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). McNeil filed an opposition to the motion on July 1, 2005, along with his own affidavit and various unverified exhibits.

On September 15, 2005, the defendants filed a supplemental memorandum in support of their motion for summary

judgment[2] along with the affidavit of Virginia Powell, a nurse assigned to PCI, and a supplemental and corrected affidavit of another PCI nurse, Amy Enloe. The plaintiff responded to the supplemental memorandum and affidavits with his own affidavit[3] and memorandum in opposition which dispute the matters asserted in the defendants' submissions.

Hence, it appears consideration of the motion is appropriate.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and

---

[2] On August 24, 2005, the undersigned directed the defendants to brief and present evidence in support of their position that the matter must be dismissed because the plaintiff had not exhausted his administrative remedies as required by the 42 U.S.C. § 1997e(a). On August 30, 2005, the defendants responded by withdrawing their affirmative defense and ground for summary judgment based upon exhaustion of administrative remedies.

[3] The latest opposing affidavits deal, to a great extent, with events which occurred after January 31, 2005, the date on which the plaintiff filed this action. Therefore on October 6, 2005, the plaintiff was ordered to file a supplemental complaint and serve it on the defendants if he intended to include latter matters in this action. The plaintiff did not respond to the order. As a result, matters which occurred after January 31, 2005, will not be considered by the court.

on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by

a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## FACTS

The facts for purposes of the defendants' motion, either undisputed or taken in the light most favorable to the plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record are as follow.

McNeil is presently incarcerated at Perry Correctional Institution, a facility of the South Carolina Department of Corrections (SCDC). McNeil was diagnosed with uveitis and iritis, chronic disorders of the eye, a symptom of which is light sensitivity. On August 17, 1999, McNeil received sunglasses from someone outside the prison, which the prison had previously authorized.

On October 13, 2004, defendant J. Bratka, while acting as a correctional officer at PCI, observed inmate Santana Elliott wearing sunglasses in the yard. Bratka then saw Elliott remove the sunglasses and give them to the plaintiff who put the sunglasses on and start to leave the area. The sunglasses were not sunglasses sold in the prison canteen. Plaintiff refused a direct order from Bratka to surrender the sunglasses to him. The plaintiff was escorted to a holding cell where he later surrendered the sunglasses without incident. The plaintiff did not tell Bratka that he needed or was authorized to have the

sunglasses for medical reasons. The confiscated sunglasses were not prescription sunglasses. Bratka cited the plaintiff for possession of contraband.

Bratka affied that he confiscated the sunglasses because they were considered contraband and his duty is to confiscate contraband from inmates. The sunglasses were considered contraband because SCDC policy prevents inmates from having the property of another inmate in their possession and the only sunglasses which inmates are allowed to have are the sunglasses sold by the canteen at the prison.

On December 2, 2004, the plaintiff complained to the medical department that his sunglasses had been taken from him and would not be returned, but stated that he had gotten another pair of sunglasses from an inmate who had been released from prison the previous day.

On December 17, 2004, Bratka again saw plaintiff wearing sunglasses which were not the type available in the canteen. When approached by Bratka, plaintiff presented a pass from the medical department giving him authorization to wear sunglasses out on the yard. However, Bratka knew that inmates were always allowed to wear sunglasses out on the yard, that no pass to do so was required, and that the medical pass did not authorize the plaintiff to wear sunglasses not from the canteen. Therefore, plaintiff was placed in a holding cell and Bratka spoke with the

contraband officer, Officer Harouff. Harouff and Bratka then asked the plaintiff if he had been given the sunglasses by the medical department, and the plaintiff affirmed that he had received the sunglasses from the medical department. However, when Harouff called the medical department he was advised that the plaintiff had not received the sunglasses from the medical department. As a result, Bratka confiscated the sunglasses because the sunglasses were contraband as not the type sold in the canteen, and charged McNiel with lying. Further, Bratka's understanding was that if an inmate needed sunglasses for medical reasons and could not afford to purchase them in the canteen, the medical department would purchase a pair from the canteen for the inmate.

The plaintiff spoke to Warden Bazzle about the sunglasses and the Warden contacted Bratka. Bratka relayed the aforementioned facts to the Warden. The Warden contacted the medical department and was likewise told that the sunglasses had not been provided to the plaintiff by the medical department. The Warden told the plaintiff that if an inmate needed sunglasses for medical reasons and could not afford to purchase them in the canteen, the medical department would purchase a pair from the canteen for the inmate. The plaintiff was also told that he could send the confiscated sunglasses home, but that they would not be returned to him by the prison.

Plaintiff eventually asked medical staff to obtain sunglasses for him from the canteen because he was indigent, and medical personnel did so.

## EIGHTH AMENDMENT LAW

The Eighth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the infliction of punishment incompatible with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The principles of the Eighth Amendment establish a government's obligation to provide medical care to those being punished with incarceration. See, id. at 103, 97 S.Ct at 290. Accordingly, the government's deliberate indifference to the serious medical needs of its prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Id. at 104, 97 S.Ct. at 291. Deliberate indifference may be manifested in different ways, including malpractice at the hands of the prison doctors who render treatment or the denial or delay of treatment by prison guards, but regardless of how it is evidenced, deliberate indifference states a cause of action under § 1983. Id. at 105, 97 S.Ct at 291.

However, not every claim of inadequate treatment states an Eighth Amendment violation. Inadvertent failure to provide adequate medical care does not constitute an unnecessary and

8

wanton infliction of pain and is not considered repugnant to the conscience of mankind. Id. at 105-06, 97 S.Ct at 292. The prisoner must show acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Id. at 106, 97 S.Ct. at 292. Deliberate indifference for purposes of the Eighth Amendment is a subjective standard: for an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). An official's failure to alleviate a significant risk that he should have perceived but did not, while not commendable, cannot be condemned as the infliction of punishment outlawed by the Eighth Amendment. See, Farmer, 511 U.S. at 838, 114 S.Ct. at 1979. Under exceptional circumstances not present here, an official's knowledge of a substantial risk of harm may be inferred from the sheer obviousness of the risk. See, e.g., Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994)(citing Farmer, 511 U.S. at 842 and n. 8, 114 S.Ct at 1981 and n. 8).

## PRISON RULES

The defendants have affied that the rules which were enforced here were promulgated to promote institutional security. The Fourth Circuit Court of Appeals stated that "[a] prison

regulation is valid if it is reasonably related to legitimate penological interest." <u>United States v. Stotts</u>, 925 F.2d 83. 85-6 (4th Cir. 1991) (quoting <u>Turner v. Safley</u>, 482 U.S. 78 (1987)). The Court in <u>Stotts</u> stated that under the Supreme Court's <u>Turner</u>, opinion, the courts are to focus on whether the regulations are reasonable. There is a "deferential standard that is 'necessary if prison administrators . . . , and not the Courts, [are] to make the difficult judgments concerning institutional operations.'" <u>Stotts</u>, 925 F.2d at 86 (quoting <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119 (1977)). This issue was also addressed by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1977). The <u>Bell</u> court stated, "maintaining institutional security and preserving internal order and discipline are essential goals which may require limitation or retraction of the retained constitutional rights of both convicted criminals and pre-trial detainees." <u>Bell</u>, 441 U.S. at 546. The Court went on to state:

> Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel to prevent escape or unauthorized injury. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration safeguarding institutional security.

<u>Bell</u>, 441 U.S. at 547.

10

## QUALIFIED IMMUNITY

The defendants asserted that they are entitled to qualified immunity. The doctrine of qualified immunity recognized in Harlow v. Fitzgerald, 457 U.S. 800 (1982) is "designed to shield officials not only from ultimate liability but also from the hardships of litigation itself, 'the immunity shield is necessarily more protective than is the defense on the merits.'" Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991). The Fourth Circuit Court of Appeals more recently stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established', the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley vs. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).

The Fourth Circuit Court of Appeals stated that "a court must first ask the legal question whether the plaintiffs have alleged a violation of clearly established law of which a reasonable official should have known; summary judgment must be

11

granted if they have not." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). If the plaintiff has sufficiently alleged a violation, then the court must review the record to determine if the defendants' conduct violated a clearly established substantive right of which a reasonable official should have known. The Court in Lopez stated that "[t]he qualified immunity defense from § 1983 damages claims is more than merely a defense from liability; it is an 'entitlement not to stand trial or face the other burdens of litigation' that would be effectively lost if a case is erroneously permitted to go to trial." Id. at 489 (quoting Mitchell v. Forsyth, 472 U.S. 511 (1958)).

## DISCUSSION

A review of the record and relevant case law reveals the defendants are entitled to judgment as a matter of law on all the plaintiff's claims.

First, the defendants are entitled to Harlow qualified immunity from damages in their individual capacities. The plaintiff has failed to point to any constitutional or statutory right which the defendants have violated. Here, the plaintiff violated SCDC rules by having contraband in his possession, and Bratka twice appropriately took the sunglasses and charged the plaintiff. Bratka, as well as Bazzle, investigated the plaintiff's allegations that the sunglasses were provided to him by the medical department, and both were informed that this was

12

not the case. Therefore, the plaintiff was clearly in violation of SCDC policies by possession of the contraband sunglasses and the sunglasses were properly seized from the plaintiff. While plaintiff could have bought sunglasses from the canteen or asked medical to obtain canteen sunglasses for him if he could not afford them, he did not. Instead, he chose to break prison rules to get his glasses and then alleged that he had been subjected to cruel and unusual punishment by prison officials properly enforcing prison rules. Such conduct is in bad faith and frivolous. There has been no violation of a clearly established right of which a reasonable official in the defendants' position should have known and the defendants are entitled to qualified immunity.

Second, to the extent that the defendants are sued in their official capacity, they are to be treated as the State of South Carolina and are not subject to suit. See, e.g., Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996).

Third, to the extent that McNeil claims his due process rights were violated when his sunglasses were not returned to him by prison officials, the claim fails in the face of Bazzle's offer to let the plaintiff send the glasses home and the plaintiff's failure to do so. Even if McNiel had not been allowed to send the glasses home, no due process claim would lie under § 1983 because South Carolina provides an adequate post-

deprivation remedy for his loss of property. The South Carolina Tort Claims Act waives sovereign immunity to extent of insurance coverage for torts of state employees acting within scope of employment. See, S.C. Code Ann. § 15-78-10 to 15-78-200 (Law. Co-op. Supp. 1999). In short, McNiel failed to avail himself of the right to secure the property and send it home and to his right to due process. No one deprived McNiel of any due process; he simply failed to exercise his right to due process.

### CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion to dismiss or for summary judgment be granted and all other motions be denied as moot. It is also recommended that this dismissal also be deemed "frivolous" as provided by 28 U.S.C. § 1915(e)(2)(B)(I).

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

December 12, 2005

<u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
&
The **Serious Consequences** <u>of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* <u>Branch v. Martin</u>, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* <u>Wright v. Collins</u>, supra; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
